IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| ALLEN HARIM FOODS, LLC,<br><br>     Plaintiff,<br><br> v.<br><br>WHERE FOOD COMES FROM, INC. d/b/a IMI GLOBAL,<br><br>     Defendant. | **Plaintiff's Original Complaint**<br><br>Case No. _____<br><br>**Jury Trial Demanded** |

Plaintiff Allen Harim Foods, LLC ("Allen Harim") files this Original Complaint against Defendant Where Food Comes From, Inc. d/b/a IMI Global ("IMI") and states as follows:

## I. Nature of the Action

1. Allen Harim is a leading producer and processor of No Antibiotics Ever Chicken. In the poultry industry, implementing and following good animal welfare practices is critical to success. Allen Harim's customers demand not only that Allen Harim produce good quality poultry but also that the poultry are raised humanely.

2. Many of Allen Harim's customers require Allen Harim to obtain and maintain certifications showing the farms that raise Allen Harim's poultry satisfy the requirements of a particular animal welfare program. IMI is in the business of auditing companies like Allen Harim and providing the required certifications.

3. IMI regularly audited Allen Harim's business and certified that certain farms that raise poultry for Allen Harim satisfied the required animal welfare program. In April 2019, IMI received a complaint alleging Allen Harim had

violated the program requirements. Without contacting Allen Harim to verify the allegations or otherwise investigating the accuracy of the complaint, IMI decided to revoke Allen Harim's certification for all farms. To make matters worse, IMI informed at least one of Allen Harim's key customers that it was revoking Allen Harim's certification before it even contacted Allen Harim.

4. When IMI finally conducted the investigation—an investigation IMI was contractually required to perform *before* revoking Allen Harim's certification—the investigation showed Allen Harim's certification never should have been revoked. Thus, IMI retroactively reinstated Allen Harim's certification. But it was too late. Because IMI informed at least one of Allen Harim's customers of the certification revocation before even contacting Allen Harim, that customer stopped accepting meat from Allen Harim and sought out another supplier.

5. As a result of IMI's breaches of its contractual duties, interference with Allen Harim's customer relationships, and disparagement of Allen Harim, Allen Harim suffered close to a million dollars in monetary damages. And because IMI refuses to compensate Allen Harim for the injury it caused, Allen Harim is now forced to file this lawsuit.

## II. Parties, Jurisdiction and Venue

6. Plaintiff Allen Harim Foods, LLC ("Allen Harim") is a Delaware limited liability company with its principal place of business located at 29984 Pinnacle Way, Millsboro, Delaware 19966. The sole member of Allen Harim Foods, LLC is Harim USA LTD, a Delaware corporation with its principal place of business located in Delaware.

7. Defendant Where Food Comes From, Inc. d/b/a IMI Global ("IMI") is a Colorado corporation with a principal place of business located at 202 6th Street, Suite 400, Castle Rock, Colorado 80104. IMI can be served through its registered agent, Dannette Henning, 202 6th Street, Suite 400, Castle Rock, Colorado 80104.

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, in that the matter in controversy is between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this district. Venue is also proper in this Court under 28 U.S.C. § 1391(b)(1) because IMI is deemed to reside in this district in accordance with 28 U.S.C. § 1391(c)(2).

### III.   Factual Allegations

A. Allen Harim's operations.

10. Allen Harim is a leading producer and processor of No Antibiotics Ever Chicken on the Delmarva Peninsula. Allen Harim is dedicated to producing safe and wholesome products of superior quality for its customers and consumers. Allen Harim is also committed to raising and processing poultry that have been treated humanely in ways that meet or exceeds industry standards.

11. Allen Harim operates a hatchery, feed mill, and processing plant on the Delmarva Peninsula, but it does not raise the poultry. Instead, Allen Harim—like most poultry integrators—contracts with independent farmers to raise the chickens ("broilers") until they are ready to be harvested and sold to consumers.

12.     Allen Harim offers a variety of products for grocery stores, restaurant, and wholesale customers, including Allen Harim's own retail brands, private label, and bulk packaging. For example, Allen Harim's signature brand, Nature's Sensation, is premium choice poultry for consumers that is humanely raised on family farms and process verified for traceability from farm to fork.

13.     Process verification is important for Allen Harim's customers. Indeed, some of Allen Harim's customers only purchase meat from poultry producers who are certified by Global Animal Partnership ("GAP").

14.     GAP is a 501(c)(3) charitable organization whose stated mission is working collaboratively to facilitate and encourage continuous improvement and higher welfare in animal agriculture. GAP seeks to embrace a multi-stakeholder approach by bringing together farmers, scientists, ranchers, grocers, restaurateurs, consumers and animal advocates to develop its program, the GAP 5-Step™ Animal Welfare Rating Standards. According to the GAP Policy Manual, the intent of the GAP 5-Step™ Animal Welfare Program ("GAP Program") is to improve farm animal welfare by substantiating compliance with the standards through independent third-party verification. Thus, to obtain GAP Program certification, Allen Harim had to contract with a third-party auditor so the third party could verify Allen Harim's compliance.

B.     **Allen Harim contracts with IMI to certify GAP Program compliance.**

15.     Allen Harim began using IMI as a vendor in 2013. In July 2018, Allen Harim and IMI entered into the IMI Project and Services Agreement ("IMI

4

Contract").[1]  The IMI Contract sets forth the "*GAP 5-Step Animal Welfare Verification Program*," which includes visiting and auditing the facilities of farmers who raise broilers for Allen Harim.

16.  Each farm that is part of Allen Harim's process verified program must be certified as GAP Program compliant every 15 months.  However, the IMI Contract grants IMI the right "to conduct one or more additional confirmation audits to confirm [Allen Harim's] compliance with the requirements of the specific program or programs covered by this Agreement."  Importantly, the IMI Contract does not allow IMI to revoke Allen Harim's GAP Program certification for any farm without conducting a confirmation audit.

17.  Like the IMI Contract, the GAP Policy Manual requires an investigation before a farm's GAP Program certification may be revoked.  When a complaint is received regarding "existing certified operations," the GAP Policy Manual says the "case is assigned to an appropriate Investigator depending on the nature of the complaint."  The GAP Policy Manual also anticipates a "Certifier"—like IMI—may be "*required to go on-site to conduct an investigation*" to determine the merits of the complaint.  In other words, the complaint resolution process in the GAP Policy Manual mirrors the confirmation audit process required by the IMI Contract.

---

[1] The IMI Contract, dated June 16, 2018, was between IMI and Allen Harim Farms, LLC.  Allen Harim Farms, LLC was merged into Allen Harim Foods, LLC on October 24, 2018.  Additionally, Allen Harim Foods, LLC and Allen Harim Farms, LLC are colloquially referred to as "Allen Harim LLC" or "Allen Harim."

5

18. The IMI Contract also requires IMI "to keep in strictest confidence and trust" confidential information regarding Allen Harim's business and "not disclose any Confidential Information to any other third party entity or person." This provision prohibits IMI from disclosing information regarding Allen Harim's business to others, including Allen Harim's customers.

C. **IMI breaches the IMI Contract by revoking Allen Harim's GAP Program certification without conducting a confirmation audit and sharing Allen Harim's confidential information with its customers.**

19. In April 2019, IMI allegedly received a report that Allen Harim engaged in conduct that violated the GAP Program. Some of the chicks at issue in the complaint were delivered to farms located in Maryland.

20. Without consulting Allen Harim, visiting Allen Harim's facilities, visiting the farms in question, or otherwise verifying the accuracy of the allegations, IMI unilaterally revoked Allen Harim's GAP Program certification for all farms in violation of both the IMI Contract and the GAP Policy Manual. Worse yet, IMI informed one of Allen Harim's key customers that it was revoking Allen Harim's GAP Program certification before IMI informed Allen Harim. Indeed, Allen Harim learned that its GAP Program certification was being revoked when a customer called Allen Harim asking for an explanation. But because IMI did not inform Allen Harim of its plan to revoke Allen Harim's GAP Program certification, Allen Harim could not answer its customer's questions.

21. Even after IMI belatedly shared the news with Allen Harim that it had decided to revoke Allen Harim's GAP Program certification without conducting a confirmation audit or other proper investigation, IMI refused to share any

information with Allen Harim regarding the allegations that led to the revocation, thereby depriving Allen Harim of the opportunity to respond to and refute the allegations and preventing Allen Harim from meaningfully discussing the situation with its customers.

22. When IMI finally conducted the required confirmation audit, IMI confirmed Allen Harim had not engaged in any wrongful conduct. IMI therefore reinstated Allen Harim's GAP Program certifications for all certified farms retroactive to April 15, 2019—the same day IMI improperly revoked the certifications.

23. IMI's investigation also revealed that (1) the complaint came from the manager of a farm in Maryland that was not part of Allen Harim's GAP Program certification, (2) Allen Harim had taken corrective action against the complainant just a few days before he complained to IMI, and (3) the owner of the broiler farm in question said his farm manager never should have contacted IMI because the manager was venting "his fresh raw frustrations" for having "made an error in judgment earlier in the week that prompted an interaction with Allen Harim and resulted in a bunch of additional work that he had to complete on the farm to rectify the situation." In sum, the complaint never should have been made, and IMI's eventual audit proved Allen Harim's GAP Program certifications never would have been revoked if IMI had conducted the required investigation before revoking the certifications.

**D.     Allen Harim suffered serious injury as a result of IMI's hasty and improper revocation of Allen Harim's GAP Program certifications.**

24.     By the time IMI finally conducted the required confirmation audit and reinstated Allen Harim's GAP Program certifications, the damage had been done. As noted above, IMI chose to inform at least one of Allen Harim's customers that it was revoking Allen Harim's GAP Program certification before contacting Allen Harim.  As a result of IMI's improper actions—including suspending Allen Harim's GAP Program certifications without conducting a confirmation audit and unjustifiably interfering with Allen Harim's customer relationships—Allen Harim has already suffered approximately $900,000 in economic damages.

### IV.     Causes of Action

### COUNT I
### Breach of Contract

25.     Allen Harim re-asserts and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

26.     The parties entered into the IMI Contract, which is a valid and enforceable contract.  Allen Harim performed all of its material obligations under the IMI Contract.

27.     IMI breached the IMI Contract by revoking Allen Harim's GAP Program certifications without conducting a confirmation audit and by sharing Allen Harim's confidential information with Allen Harim's customers.

28.     IMI's breaches of the IMI Contract caused Allen Harim monetary damages of at least $892,715, plus costs and expenses of litigation and attorneys' fees.

## COUNT II
### Tortious Interference with Contract

29. Allen Harim re-asserts and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

30. Allen Harim has valid and enforceable contracts with its customers. In accordance with those contracts, Allen Harim sells meat that is certified as compliant with the GAP Program to its customers.

31. IMI knew Allen Harim had contracts to supply meat to its customers and that the contracts required the meat to be GAP Program certified.

32. IMI intentionally interfered with Allen Harim's customer contracts by telling Allen Harim's customer that Allen Harim had violated the GAP Program and that IMI had revoked Allen Harim's GAP Program certification.

33. As a result of IMI's interference with Allen Harim's customer contracts, at least one of Allen Harim's customers stopped accepting meat from Allen Harim for a period of time, thereby depriving Allen Harim of its customer relationship. IMI's interference also led Allen Harim's customer to purchase meat from another supplier and demand that Allen Harim pay the price difference between the amount Allen Harim's customer would have paid Allen Harim for the meat and the amount the customer had to pay its alternative supplier.

34. As a result of IMI's intentional interference with Allen Harim's customer contracts, Allen Harim has suffered monetary damages of at least $892,715, plus costs and expenses of litigation and attorneys' fees.

## COUNT III
### Defamation

35. Allen Harim re-asserts and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

36. IMI made false and defamatory statements to at least one Allen Harim customer regarding Allen Harim on or about April 15, 2019, including that Allen Harim violated the requirements of the GAP Program and that Allen Harim's violations of the GAP Program were severe enough to warrant immediate revocation of Allen Harim's GAP Program certifications.

37. Because the false statements injured Allen Harim's business, they constitute defamation *per se*, and IMI is legally at fault for making the false statements. Moreover, IMI acted with actual malice because it knew the allegations had no basis in fact. In the alternative, IMI acted recklessly and without justification because it conducted no investigation to determine the veracity of the allegations against Allen Harim before disparaging Allen Harim to its customer.

38. As a result of IMI's defamation, Allen Harim has suffered monetary damages of at least $892,715, plus costs and expenses of litigation and attorneys' fees.

### V.   Jury Demand

39. In accordance with Federal Rule of Civil Procedure 38, Allen Harim hereby demands a jury trial on all issues triable by a jury.

### PRAYER OF RELIEF

WHEREFORE, Plaintiff Allen Harim Foods, LLC prays for relief as follows:

40. that judgment be entered for Allen Harim and against IMI for compensatory damages in an amount to be ascertained and established at trial;

41. that judgment be entered for Allen Harim and against IMI for punitive damages in an amount to be ascertained and established at trial;

42. that judgment be entered for Allen Harim and against IMI for costs, attorneys' fees, and other expenses of litigation incurred by Allen Harim;

43. that Allen Harim be awarded prejudgment and post-judgment interest as allowed by law; and

44. that Allen Harim have such other and further relief as the Court may deem proper.

Respectfully submitted this 16th day of March, 2020.

By: */s/Richard B. Benenson*
Richard B. Benenson
District of Maryland Bar No. 24802
Email:  rbenenson@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK
410 17th Street, Suite 2200
Denver, CO 80202
Telephone:  (303) 223-1100
Facsimile:  (303) 223-1111

- and -

Clayton E. Bailey (*Pro Hac Vice* pending)
Texas State Bar No. 00796151
Email:  cbailey@baileybrauer.com
Benjamin L. Stewart (*Pro Hac Vice* pending)
Texas State Bar No. 24046917
Email:  bstewart@baileybrauer.com
BAILEY BRAUER PLLC
8350 N. Central Expressway, Ste. 650
Dallas, Texas 75206
Telephone:  (214) 360-7433
Facsimile:  (214) 360-7435

***Attorneys for Plaintiff Allen Harim Foods, LLC***